UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SIMON PAREDES and RITA
PAREDES,

       Plaintiffs,

v.                             Case No:  2:17-cv-593-FtM-38MRM

BANK OF AMERICA, N.A.,

       Defendant.
_____/

## OPINION AND ORDER[1]

This matter comes before the Court on Defendant Bank of America's Motion to Dismiss (Doc. 14).  Plaintiffs Simon Parades and Rita Parades filed a Response in Opposition.  (Doc. 15).  The matter is ripe for review.

## BACKGROUND

This case concerns Bank of America's allegedly fraudulent loan modification practices when administering a government program designed to alleviate financial hardship after the Great Recession.  In March 2004, Plaintiffs executed a mortgage and note for a home at 923 SE 18th St., Cape Coral, FL 33990.  (Doc. 1 at ¶ 34).  Bank of America eventually became the loan servicer on the account.  (Doc. 1 at ¶ 35).  In 2009,

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Plaintiffs experienced financial hardship and contacted Bank of America requesting a loan modification under the Home Affordable Modification Program ("HAMP"). (Doc. 1 at ¶ 36). After Bank of America supplied an application, Plaintiffs returned it with supporting financial documents. (Doc. 1 at ¶ 40).

On January 21, 2010, Plaintiffs contacted Bank of America again and a representative named "Maria" advised them to stop making mortgage payments or "they could not be eligible for a HAMP modification." (Doc. 1 at ¶ 37). They allege this statement was false because default was not required for HAMP eligibility. (Doc. 1 at ¶ 37). However, Plaintiffs relied on this statement, did not make their regular mortgage payments, and fell into default. (Doc. 1 at ¶ 39).

Then, on March 3, 2010, Plaintiffs spoke to a Bank of America representative named "Ramiro" and "others," who stated that Plaintiffs' HAMP application was incomplete and that they needed to "resubmit another application." (Doc. 1 at ¶ 41). Plaintiffs received the same or similar directives in later phone calls. (Doc. 1 at ¶ 41). They allege these statements were false and this was an intentional act by Bank of America to frustrate their application process. (Doc. 1 at ¶¶ 41, 43). But Plaintiffs relied on these statements and resubmitted their modification application. (Doc. 1 at ¶ 43).

On June 21, 2010, a Bank of America representative named "Maria" verbally informed Plaintiffs that their HAMP application was approved for a trial loan modification. (Doc. 1 at ¶ 46). She then requested Plaintiffs make "trial payments" of more than $1,300.00. (Doc. 1 at ¶ 46). Plaintiffs allege this statement was false because the HAMP application had not been approved. (Doc. 1 at ¶ 46). But Plaintiffs made three trial payments of more than $1,300.00. (Doc. 1 at ¶ 49). They claim they were damaged

because Bank of America "placed those payments in an unapplied account and refused to credit the account," because they ultimately lost their home, and because their credit rating suffered. (Doc. 1 at 50).

Finally, Plaintiffs allege Bank of America charged them for thirty-eight property inspections between 2008 and 2012, even though they "were living in the home". (Doc. 1 at ¶ 52). They claim that Bank of America applied trial payments submitted for the HAMP modification to pay for inspection fees, and that it "omitted the fact that the bank was conducting unnecessary and improper inspections on their home and charging their account inspections fees." (Doc. 1 at ¶ 53).

Plaintiffs' home was foreclosed upon in September 2010, and a judgment was entered. (Doc. 1 at ¶ 49). Plaintiffs vacated the home sometime between 2010 and 2012.[2] (Doc. 1 at ¶ 49). Based on these facts, Plaintiffs filed this Complaint on October 31, 2017, alleging a single fraud count. (Doc. 1). Now, Bank of America moves to Dismiss. (Doc. 14).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a pleading for failure to state a claim upon which relief can be granted. The propriety of such a dismissal is guided by the *Twombly–Iqbal* plausibility standard, which requires a plaintiff to allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" to support a claim. Twombly, 550 U.S. at 556; *see also* Randall v. Scott, 610 F.3d 701, 708

---

[2] The Complaint is unclear about when Plaintiffs left their home. Paragraph 52 of the Complaint alleges that Plaintiffs were "living in their home until 2010," but also states that thirty-eight inspections occurred "from 2008 to 2012, all while they were living in the home." (Doc. 1 ¶ 52). Elsewhere, in paragraph 49, the Complaint alleges that "Plaintiffs moved out of their home in 2011." (Doc. 1 ¶ 49).

3

n. 2 (11th Cir. 2010). The Court must accept all factual allegations in a plaintiff's complaint as true and take them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). This acceptance is limited to well-pleaded factual allegations. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). A "the-defendant-unlawfully harmed me accusation" is insufficient. *Iqbal*, 556 U.S. at 677. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal modifications omitted).

Fraud allegations are subject to heightened pleading standards under Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud." Generally, this occurs where the pleading alleges

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and
>
> (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and
>
> (3) the content of such statements and the manner in which they misled the plaintiff, and
>
> (4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotations omitted). But allegations relating to "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Id.* at 1370-71 (internal quotations

omitted). Though it imposes a heightened pleading standard, the Eleventh Circuit has cautioned that "Rule 9(b) must not be read to abrogate [R]ule 8 . . . and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of [R]ule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985). Requisite particularity has been found in a pleading that lacked specifics but still presented enough description to sufficiently apprise defendants of allegations lodged against it. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (list containing fraud allegations and nature of statements found to meet the Rule 9(b) threshold, even though precise words were not alleged); *see also Brooks*, 116 F.3d at 1371 ("alternative means are also available to satisfy the rule."). Though "[i]t is certainly true that allegations of date, place or time [are traditional indicia of particularity] . . . nothing in the rule requires them." *Seville Indus. Mach. Corp.*, 742 F.2d at 791.

## DISCUSSION

Bank of America argues the Complaint should be dismissed for a multitude of reasons. When confronted with the same claims, arguments, and defenses, a court in the Middle District of Florida has found that only one of Bank of America's arguments need be addressed because Plaintiffs' claims are time-barred. *Eddie v. Bank of Am., N.A.*, No. 8:17-CV-1534-T-26TBM, 2018 WL 573406, at *2 (M.D. Fla. Jan. 26, 2018). The Court agrees with that decision and will apply the same logic here.

In Florida, fraud allegations are subject to a four-year statute of limitations. Fla. Stat. 95.11(3)(j). Florida's delayed discovery doctrine states that actions founded on fraud accrue "from the time the facts giving rise to a cause of action were discovered or

5

should have been discovered with the exercise of due diligence. Fla. Stat. § 95.031(2)(a); *see also Hearndon v. Graham,* 767 So. 2d 1179, 1184 (Fla. 2000); *Thomas v. Lopez*, 982 So. 2d 64, 67 (Fla. 5th DCA 2008). Here, all of Bank of America's allegedly fraudulent activity took place between 2009 and 2012, which is approximately five years before the Complaint in this case was filed and therefore outside of Florida's four-year statute of limitations. (Doc. 1 at ¶¶ 34, 36-41, 46, 49, 52). Their claims must fail because the Complaint does not adequately plead the elements necessary under the delayed discovery doctrine.

Though the Complaint states that Plaintiffs discovered five declarations from another case regarding Bank of America's fraudulent practices (Docs. 1-2; 1-3; 1-4; 1-5; 1-6), it does not specifically detail when or how that information was discovered. It seems this was for a good reason. Though the declarations all detail the same or similar practices undertaken by Bank of America, four were formed in May or June 2013, which still lies outside of the four year statute of limitations for this case. (Docs. 1-3; 1-4; 1-5; 1-6). Though one declaration was made in February 2017 (Doc. 1-2), it offers no new information from the four 2013 declarations, and nothing that could not have been gleaned because of due diligence at an earlier date.

Moreover, Plaintiffs fail to allege why they could not have discovered the allegedly fraudulent acts at or near the time of commission through exercising reasonable due diligence. First, Plaintiffs allege that in a 2009 telephone conversation, a Bank of America representative misrepresented that default or delinquency on their Mortgage was required to be eligible for HAMP. But Florida law is clear that simple reliance on a misrepresentation is not enough to delay the accrual of fraud claims because a party has

6

a duty of reasonable due diligence. *See Thomas,* 982 So. 2d at 67. Had they checked, Plaintiffs would have discovered that HAMP directives were publicly available online. U.S. Dep't of Treasury, HAMP Supplemental Directive (SD) 09–01 ("SD 09–01") (Apr. 6, 2009). They would have also discovered what they were told was incorrect, and that a mortgage could be HAMP eligible if it was delinquent *or* if default was reasonably foreseeable. *Id.* at 2. Failing to verify the statements with publicly available information does not qualify as due diligence.

Second, Plaintiffs allege they were falsely informed that Bank of America did not receive their documents, or that their documents were incomplete or out of date, which resulted in the submission of repeated HAMP applications. Still, had Plaintiffs exercised reasonable due diligence they would have known of the completeness of their documents, and the potentially faulty processing of their HAMP application, when their home was foreclosed upon in 2010. Instead, they waited seven years to bring the claim. This again fails to satisfy the due diligence threshold.

Third, Plaintiffs allege Bank of America made false statements of fact when it stated that Plaintiffs were "approved" for a HAMP modification and requested "trial payments." (Doc. 1 at ¶ 46). But as the Court found above, if those statements were false, Plaintiffs could have reached the conclusion when their home was foreclosed upon in 2010, giving them until 2014 to sue. Plaintiffs waited until October of 2017 to seek redress. Their conscious decision not to pursue a remedy cannot be the basis to delay the accrual of the statute of limitations.

Fourth, to the extent that Plaintiffs argue that Bank of America "fraudulently omitted" its practice of placing trial period payments into "unapplied accounts," Plaintiffs'

claims also fail. As found in *Eddie*, "this is exactly how the Treasury Department requires servicers to handle trial payments." *Eddie*, 2018 WL 573406, at *3 (citing Making Home Affordable Program Handbook for Servicers of Non–GSE Mortgages, v5.1 129 (May 26, 2016)). Even if the activity was fraudulent, Plaintiffs would have been aware they made unapplied payments when their home was foreclosed upon in 2010. Claims stemming from those matters thus began to accrue then.

Finally, Plaintiffs claim they were defrauded by Bank of America because it did not communicate it was conducting "unnecessary and improper inspections on their home and charging their account inspection fees" between 2008 and 2012. (Doc. 1 at ¶¶ 52-53). This position fails. Plaintiffs allege they lived in the home until sometime between 2010 to 2012,[3] but do not allege they were unaware of property inspections going on during this time, or at any other time after that. (Doc. 1 at ¶¶ 49, 52). Even if they were unaware, the Complaint does not specifically allege that they could not have discovered this information through exercising reasonable due diligence.

Plaintiffs attempt to avoid the inexorable reality of dismissal by arguing that dismissing the Complaint as time-barred at this stage would be procedurally unwarranted. The Court disagrees. The Eleventh Circuit has specifically held that dismissal on statute of limitations grounds is appropriate where it is "apparent from the face of the complaint" that the claim is time-barred. *La Grasta*, 358 F.3d at 845 (internal punctuation omitted). This is precisely the case here. As the Court has outlined, it is apparent from the face of

---

[3] Because the Complaint lists multiple dates upon which Plaintiffs' terminated their residency at the home, the Court also observes that the Complaint fails to meet the heightened pleading threshold of Rule 9(b).

the Complaint that the misrepresentations and actions occurred from 2009 through 2012. At best, Plaintiffs waited five years to sue. Because the Complaint does not plead the specific facts necessary to delay the accrual of Florida's four-year statute of limitations, the court finds as a matter of law that the claims are due to be dismissed.[4]

Accordingly, it is now

**ORDERED:**

1. Defendant Bank of America's Motion to Dismiss (Doc. 14) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

2. The clerk is directed to enter judgment in favor of the Defendant, to terminate any pending motions, and to close this case.

**DONE** and **ORDERED** in Fort Myers, Florida this 27th day of February, 2018.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

---

[4] Plaintiffs neither seek leave to file an amended complaint, nor suggest to the Court the substance of any proposed amendment. Thus, dismissal with prejudice is proper. *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018).